UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

NICOLE RIGGS                              CIVIL ACTION NO. 6:18-cv-00729

VERSUS                                    JUDGE DOUGHTY

DXP ENTERPRISES, INC., ET AL.             MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Two motions are currently pending before the court. The first pending motion is defendant DXP Enterprises, Inc. d/b/a C.W. Rod Tool Co.'s motion (Rec. Doc. 35), which seeks to have certain portions of the plaintiff's first amended complaint stricken under Fed. R. Civ. P. 12(f) and also seeks the dismissal of certain of the plaintiff's claims under Fed. R. Civ. P. 12(b)(6). The second pending motion is defendant Tranae Marks's motion (Rec. Doc. 36), which adopts and reiterates the arguments set forth in support of DXP's motion. The motions were referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. For the reasons explained in a prior order (Rec. Doc. 45), the motions to dismiss were converted to motions for summary judgment, notice was provided to the litigants, additional briefing was permitted, and ruling on the motions to strike was deferred so that all aspects of the two pending motions could be resolved simultaneously.

The motions are opposed.  (Rec. Doc. 41).[1]  Now, for the following reasons, it is recommended that the motions be GRANTED IN PART and DENIED IN PART.

## **Background**

This is an employment discrimination lawsuit brought by the plaintiff, Nicole Riggs, against her former employer, DXP, and her former coworkers, Brian Ross[2] and Tranae Marks.  It is undisputed that Ms. Riggs was formerly employed by DXP and that her employment with that company was involuntarily terminated on February 22, 2016.  In her original complaint, the plaintiff asserted several claims against the three original defendants, including sexual harassment and hostile work environment claims under Title VII of the Civil Rights Act of 1964 and the Louisiana Employment Discrimination Law ("LEDL"); retaliation claims under federal and state law; civil rights claims under 42 U.S.C. § 1983; a claim that she was denied leave under the Family and Medical Leave Act of 1993 ("FMLA"); and a claim based on her having filed a complaint with the Occupational Safety and Health Administration ("OSHA").  The plaintiff also asserted Louisiana state-law claims

---

[1]    The plaintiff filed a brief opposing the motions.  (Rec. Doc. 41).  Thereafter, this Court issued an order stating that "the parties shall supplement the record. . . by filing. . . a supplement[al] brief. . . and . . . any relevant. . . evidence." (Rec. Doc. 45 at 6).  The plaintiff did not file a supplemental brief or submit any evidence after that order was issued.

[2]    Mr. Ross was named as a defendant in the plaintiff's original complaint but he was not named as a defendant in the plaintiff's amended complaint.  This Court therefore finds that the plaintiff's claims against Mr. Ross were abandoned.  References in this report and recommendation to "the defendants" therefore refers to DXP and Ms. Marks unless otherwise noted.

for tortious interference with contract, tortious interference with business relationships, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, negligent training, negligent supervision, negligent retention of employees, defamation per se, conspiracy to defame, and invasion of privacy.

In response to the plaintiff's complaint, DXP and Ms. Marks filed a motion (Rec. Doc. 7), seeking dismissal of some but not all of the plaintiff's claims.  They did not seek dismissal of the plaintiff's Title VII retaliation claim against DXP based on the termination of her employment or her state-law claims for defamation *per se* and intentional infliction of emotional distress against DXP and Ms. Marks.  The court granted the motion in part and dismissed with prejudice eleven of the claims that were asserted against the defendants:  the Section 1983 claim, the FMLA claim, the OSHA claim, the tortious interference with contract claim, the tortious interference with business relations claim, the five negligence claims, and the conspiracy-to-defame claim.  (Rec. Doc. 27 at 1).  The court also dismissed with prejudice any sexual harassment, hostile work environment, and retaliation claims asserted against Ms. Marks.  (Rec. Doc. 27 at 1).  The court ordered the plaintiff to file an amended complaint "in order to omit any and all prescribed claims and to clarify her invasion of privacy claim" (Rec. Doc. 27 at 1) and expressly reserved the defendants' right to file another motion to dismiss after the amended complaint was

filed.  At that point, the only claims remaining were:  the sexual harassment and hostile work environment claims under Title VII and LEDL that were asserted against DXP, the federal and state-law retaliation claims that were asserted against DXP, and the claims for intentional infliction of emotional distress, defamation per se, and invasion of privacy that were asserted against all three original defendants.

The plaintiff filed her amended complaint (Rec. Doc. 30), and DXP and Ms. Marks responded by filing the instant motions (Rec. Docs. 35 and 36).

## Law and Analysis

### I.    The Motion to Strike

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure, which states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Deciding whether to strike all or a portion of a pleading lies within the court's discretion.[3]  A motion to strike under Rule 12(f) "is a drastic remedy to be resorted to only when

---

[3]    *In re Beef Industry Antitrust Litigation*, MDL Docket No. 248, 600 F.2d 1148, 1168–69 (5th Cir. 1979) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1382 at 807 (1969)).  See, also, *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

required for the purposes of justice."[4]  Accordingly, Rule 12(f) motions to strike are viewed with disfavor, and are infrequently granted.[5]

In this case, the defendants seek to strike Paragraphs 17, 18, 32(C), and 32(G) through (J) of the amended complaint and any references in the amended complaint to a conspiracy-to-defame claim, arguing that those portions of the amended complaint refer solely to claims that were already dismissed by the court.  This Court interprets the defendants' argument to be that the cited portions of the amended complaint are immaterial.  The plaintiff did not expressly address the motion to strike in her opposition brief but obliquely argued that "allegations of sexual harassment, reporting, and other facts during Plaintiff's employment would make the complaint vague as to why she was retaliated against."  (Rec. Doc. 41 at 2-3).  This Court interprets that statement as an argument that the allegations set forth in Paragraphs 17 and 18 of the amended complaint are material to the plaintiff's retaliation claims.

Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.[6]  Immateriality is established by

---

[4]     *Augustus v. Bd. of Pub. Instruction of Escambia County, Fla*., 306 F.2d 862, 868 (5th Cir. 1962) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

[5]     *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1057 (5th Cir. 1982); C. Wright & A. Miller, 5C Fed. Prac. & Proc. 3d § 1380.

[6]     C. Wright & A. Miller, 5C Fed. Prac. & Proc. 3d § 1382.

showing that the challenged allegations "can have no possible bearing upon the subject matter of the litigation."[7]

Paragraphs 17 and 18 of the amended complaint have to do with events that occurred on September 9, 2015 when the plaintiff was allegedly forced to operate a forklift and subsequently filed a report with OSHA.  While her OSHA claim was previously dismissed, the facts set forth in these two paragraphs are alleged to be one of the reasons why the defendants allegedly retaliated against the plaintiff.  For that reason, the allegations in these paragraphs are not immaterial; instead, they are material to the plaintiff's retaliation claims.  This Court therefore recommends that Paragraphs 17 and 18 not be stricken from the plaintiff's amended complaint.

On page 10 of the plaintiff's amended complaint is a title to a section of the complaint, reading:  "DEFAMATION AND CONSPIRACY TO DEFAME THE PLAINTIFF."  The court previously dismissed the plaintiff's conspiracy to defame claim with prejudice.  (Rec. Doc. 27 at 1).  Accordingly, the plaintiff's reference to a conspiracy to defame is immaterial to the remaining claims.  This Court therefore recommends that the words "AND CONSPIRACY TO DEFAME THE PLAINTIFF" should be stricken from page 10 of the plaintiff's amended complaint.

---

[7]    *Bayou Fleet Partnership, LLC v. St. Charles Parish*, 2011 WL 2680686, at *5 (E.D. La. July 8, 2011).

6

Paragraph 32 of the amended complaint contains a list of the "violations" by the defendants that the plaintiff contends entitle her to relief. The items listed in Paragraphs 32(C), (G), (H), (I), and (J), respectively, are negligent infliction of emotional distress, negligent hiring, negligent training, negligent supervision, and negligent retention. In the earlier ruling, the court dismissed with prejudice the plaintiff's claims in those categories. (Rec. Doc. 27 at 1). Accordingly, the content of Paragraphs 32(C), (G), (H), (I), and (J) is immaterial, and it is recommended that these subparagraphs should be stricken from the plaintiff's amended complaint.

Although the defendants did not move for Paragraph 32(D) of the amended complaint to be stricken, this Court notes that Paragraph 32(D) refers to tortious interference with the plaintiff's contracts and business relationships. The plaintiff's claims for tortious interference with the plaintiff's contracts and business relationships were dismissed earlier in the litigation. (Rec. Doc. 27 at 1). Accordingly, this Court *sua sponte* finds that the content of Paragraph 32(D) of the amended complaint is immaterial and recommends that Paragraph 32(D) should also be stricken from the amended complaint.

In summary, this Court recommends that the motions to strike be denied with regard to Paragraphs 17 and 18 of the plaintiff's amended complaint and granted with regard to Paragraphs 32(C), 32(D), and 32(G) through (J) of the amended complaint.

## II.    The Motions for Summary Judgment

### A.    The Applicable Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[8]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[9]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[10]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to

---

[8]    *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex*., 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).

[9]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 252; *Hamilton v. Segue Software, Inc*., 232 F.3d at 477.

[10]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

demonstrate the existence of a genuine issue of a material fact.[11]   All facts and inferences are construed in the light most favorable to the nonmoving party.[12]

**B.    The Timeliness of the Sexual Harassment, Hostile Work Environment, and Retaliation Claims Asserted Against DXP**

In support of their earlier motion to dismiss (Rec. Doc. 7), the defendants argued that the plaintiff's Title VII claim based on her first EEOC charge (other than the retaliatory discharge claim) and her state-law sexual harassment, hostile work environment, and retaliation claims were untimely.   In response to that motion, the plaintiff requested an opportunity to amend her complaint.   The court did not rule on the timeliness of those claims; instead, it ordered the plaintiff to file an amended complaint, omitting any and all prescribed claims.   (Rec. Doc. 27 at 1).   This Court's report and recommendation provided more guidance, suggesting that the plaintiff "clarify[] the factual allegations underlying these claims, particularly with regard to the time frames during which any actionable conduct allegedly occurred."   (Rec. Doc. 24 at 18).   The amended complaint provided little additional clarity, however, and the parties' briefing led this Court to convert the defendants' motions to dismiss to motions for summary judgment so that evidence beyond the four corners of the complaint could be scrutinized in resolving the timeliness issues.

---

[11]    *Washburn v. Harvey*, 504 F.3d at 508.

[12]    *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

The following facts have now been established without dispute.  The plaintiff was hired by DXP on October 16, 2013.  In June and July 2014, DXP investigated her complaint that she was sexually harassed by a customer.  She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 3, 2015, stating that she was sexually harassed by a customer around March 7, 2014, and removed by DXP from servicing that customer's account.  She further stated in the EEOC charge that she was overlooked for a promotion while out of work for surgery in July and August 2014.  She claimed in the EEOC charge that she was denied a promotion in retaliation for complaining about the sexual harassment and that her coworkers would not talk to her about why she was not promoted.  A right-to-sue letter was issued on March 16, 2016, advising that the plaintiff had ninety days in which to file suit.  Suit was not filed within ninety days.

On May 26, 2016, the plaintiff filed a second charge with the EEOC, in which she again contended that she was retaliated against for reporting inappropriate behavior by a customer, including by having her employment terminated on February 22, 2016.  A second right-to-sue letter was issued on September 26, 2017, advising that the plaintiff had ninety days in which to file suit.  The plaintiff initiated this lawsuit on December 22, 2017.

1.    **The Title VII Claims**

Before filing suit under Title VII, a plaintiff must first exhaust his or her administrative remedies by filing a charge of employment discrimination with the EEOC or state administrative agency within three hundred days of the occurrence of the alleged discriminatory conduct.[13]  The Fifth Circuit "has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII."[14] Administrative remedies are exhausted when the plaintiff files a timely charge with the EEOC and receives a statutory notice of his or her right to sue.[15]  Once the EEOC issues a right-to-sue letter, the claimant must institute a civil action within ninety days after receiving the letter or lose the right to relief for the activity described in the charge.[16]  The ninety-day requirement is strictly construed.[17]

In this case, the plaintiff's first right-to-sue letter was issued on March 16, 2016 and this Court presumes that she received the letter shortly thereafter.  But she

---

[13]    42 U.S.C. § 2000e-5(e)(1).  See, also, *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir. 2008).

[14]    *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 598 (5th Cir. 2006); see also *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).

[15]    *Taylor v. Books A Million, Inc.*, 296 F.3d at 379; *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996).

[16]    42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d at 379; *Nilsen v. City of Moss Point, Miss.*, 674 F.20 379, 381 (5th Cir. 1982).

[17]    *Taylor v. Books A Million, Inc.*, 296 F.3d at 379.

11

did not file her lawsuit within ninety days.  Instead, she waited more than a year and a half before filing suit.  Therefore, her suit is not timely with regard to any of the issues raised in her first EEOC charge – including the claim that she was retaliated against by being removed from her route, passed over for promotion, and ostracized by her coworkers for reporting sexual harassment by a customer.

The plaintiff's second EEOC charge repeated the claims articulated in her first charge and added the additional claim that the termination of her employment was retaliatory.  Filing a second EEOC charge and receiving a second right-to-sue letter does not extend the time period for filing suit on the original EEOC charge unless the second right-to-sue letter was issued pursuant to a reconsideration of the merits of the issues set forth in the original charge.[18]  "To hold [otherwise] would allow any future plaintiff to obliterate the ninety-day limitations period by repeatedly refiling the same charge with the EEOC."[19]  In this case, there is no indication that the second right-to-sue letter issued to the plaintiff was precipitated by a reconsideration of the merits of her original charge.  To the contrary, the evidence establishes that the plaintiff missed the deadline to file suit that was triggered by the first right-to-sue letter and filed a second, separate EEOC charge that appears to have been precipitated by the termination of her employment.  Accordingly, the second right-

---

[18]    *Washington v. City of Gulfport, Mississippi*, 351 Fed. App'x 916, 918 (5th Cir. 2009).

[19]    *Sparks v. Lowe's Home Ctr., Inc.*, 341 F.Supp.2d 671, 674 (E.D. Tex. 2004).

to-sue letter did not extend the deadline for her to file suit with regard to the issues raised in her first EEOC charge, and the plaintiff lost her opportunity to seek redress in this forum for those issues. Thus, she is now foreclosed from seeking to recover for being removed from her route, failing to be promoted, and being ostracized by her coworkers either on the basis that this constituted sexual harassment, a hostile work environment, or was in retaliation for complaining about sexual harassment by a customer. Those claims were asserted in her first EEOC claim and because she failed to file suit within ninety days of receiving the first right-to-sue letter, those claims are now time barred. In the second EEOC charge, the plaintiff asserted for the first time that her employment was terminated in retaliation for complaining about sexual harassment by a customer. That claim, articulated as a violation of Title VII, was not asserted in her first EEOC charge, it is not time barred, and it remains to be litigated.

Accordingly, it is recommended that DXP's motion for summary judgment should be granted with regard to the plaintiff's Title VII claims for sexual harassment, hostile work environment, and retaliation – except for her claim that she was fired in retaliation for asserting her claims – and those claims should be dismissed with prejudice.

## 2.     **The LEDL Claim**

Under Louisiana law, a claim of discrimination is a delictual action subject to a liberative prescription of one year, and the prescriptive period commences to run from the day injury or damage is sustained.[20]  As the Louisiana Supreme Court has noted, "it is well settled that the damage is sustained in any employment discrimination case at the earlier of the date the employee is informed of his termination or his actual separation from employment."[21]   Under the LEDL, however, the one-year prescriptive period is suspended for up to six months during the pendency of an EEOC investigation, creating a maximum prescriptive period of eighteen months for claims based on violations of the LEDL.[22]

In this case, the plaintiff's most recent LEDL claim arose from her termination by DXP on February 22, 2016.  Even applying the six month suspension provision,

---

[20]      Louisiana Civil Code Article 3492; *Eastin v. Entergy Corp.*, 2003-1030 (La. 02/06/04), 865 So.2d 49, 53.

[21]      *Eastin v. Entergy Corp.*, 865 So. 2d at 53-54.

[22]      La. R.S. 23:303(D) ("Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year.  However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.").  See, also, *Williams v. MMO Behavioral Health Systems, LLC*, No. 16-11650, 2018 WL 5886523, at *11 (E.D. La. Nov. 9, 2018); *Robinson v. School Board of Calcasieu Parish*, No. 2:17-cv-1568, 2018 WL 4473897, at *2 (W.D. La. Aug. 30, 2018), report and recommendation adopted, 2018 WL 4473811 (W.D. La. Sept. 18, 2018); *Kirkland v. Big Lots Stores, Inc.*, No. 12-00007, 2013 WL 495782, at *4 (W.D. La. Feb. 7, 2013).

the plaintiff should have filed suit against DXP before August 22, 2017 but she waited until December 22, 2017 to file suit.  This was twenty-two months after she was terminated and well past the eighteen-month maximum prescription period. Therefore, any claim that she might have had under the LEDL prescribed before she filed this lawsuit.  Accordingly, it is recommended that DXP's motion for summary judgment should be granted with regard to the plaintiff's LEDL claims, and those claims should be dismissed with prejudice.

### 3.    Continuing Violation and Continuing Tort Theories

The plaintiff argued that her Title VII claims and her LEDL claims are not time barred under the continuing violation doctrine and the continuing tort doctrine, respectively.  The continuing violation doctrine, which applies to Title VII claims, extends the limitations period on otherwise time-barred claims when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.[23]  Louisiana courts have equated the continuing violation doctrine with the continuing tort doctrine recognized by Louisiana law,[24] and the Fifth Circuit has

---

[23]    *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).

[24]    See, e.g., *Odeh v. City of Baton Rouge*, No. 14-00793-JJB-RLB, 2017 WL 3726019, at *5 n. 54 (M.D. La. Aug. 29, 2017) ("Louisiana jurisprudence refers to this concept [the continuing violation doctrine] as the continuing tort doctrine."); *Wilson v. Bd. of Sup'rs of Louisiana State Univ. Agric. and Mechanical College*, 2014-0074 (La. App. 1 Cir. 04/08/16); 2016 WL 1394237, *4.  ("Louisiana jurisprudence usually refers to such an allegation as the 'continuing tort doctrine.'. . .  The same concept is recognized in the federal jurisprudence, which usually calls this kind of allegation the 'continuing violation theory.'").  See, also, *Butler v. Exxon Mobil Refining*

referred to the two doctrines as being "substantially similar."[25]  Therefore, the same analysis applies whether the plaintiff's allegations are viewed as arising under Title VII or the LEDL.

When an employee complains of "separate and varied acts and decisions that occurred at different times," and the record does not establish "an organized or continuing effort to discriminate," these doctrines do not apply.[26]  Instead, they apply only when the allegedly unlawful employment practice manifests itself over time.[27]  Thus, the doctrine generally applies to hostile work environment claims rather than to intentional acts of discrimination such as failure to promote or termination of employment.[28]

In this case, the plaintiff alleged a series of separate violations in her EEOC charges:  termination of her sales route, a failure to promote her to another position, a failure to discuss the reasons for the failure to promote, and termination of her employment.   In her briefing, the plaintiff alleged that, during and after her

---

*and Supply Company*, No. 07-386-RET-SN, 2009 WL 10679375, at *11 (M.D. La. Dec. 7, 2009) (describing the two theories as "analogous.").

[25]   *Williams v. Otis Elevator Co.*, 557 Fed. App'x 299, 302 (5th Cir. 2014).

[26]   *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. App'x 348, 355-56 (5th Cir. 2013).

[27]   *Pegram v. Honeywell, Inc.*, 361 F.3d at 279.

[28]   *Odeh v. City of Baton Rouge*, 2017 WL 3726019, at *6; *Vann v. Mattress Firm, Inc.*, No. H-12-3566, 2014 WL 4677459, *4 (S.D. Tex. Sept. 18, 2014) (citing *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998)).

16

employment with DXP, Ms. Marks or other identified DXP employees told lies about her using drugs, being a criminal, and having sex with people in the office. (Rec. Doc. 41 at 5).    More particularly, the plaintiff asserted that after her termination, Ms. Marks and DXP "conspired to destroy [her] life in retaliation for filing EEOC complaints of harassment, and these actions were continuing even after her termination [and]. . . continuing in nature." (Rec. Doc. 41 at 5).  This argument overlooks the fact that the court has already dismissed the plaintiff's sexual harassment and retaliation claims against Ms. Marks and has already dismissed the conspiracy-to-defame claim against both Ms. Marks and DXP.  Furthermore, after this Court converted the pending motions to motions for summary judgment, the plaintiff presented no evidence of any such activity and consequently failed to establish if and when these alleged activities actually occurred.  The plaintiff also failed to prove that these allegations support an ongoing, organized effort to discriminate against her rather than separate and distinct acts by her employer. Accordingly, this Court finds that the continuing violation doctrine does not apply in this case, and the plaintiff's only remaining claim based on the charges she made to the EEOC is her claim against DXP for retaliatory termination of her employment.

## C.    The Plaintiff's Invasion of Privacy Claim

In her original complaint, the plaintiff expressly asserted that the defendants invaded her privacy rights.    However, the complaint contained no factual

17

underpinnings for that claim.  Therefore, the court granted the defendants' motion for a more definite statement and ordered the plaintiff "to clarify her invasion of privacy claim."  (Rec. Doc. 27 at 1).  In her amended complaint, however, the plaintiff added no factual detail to support her invasion of privacy claim.  In the instant motions, the defendants sought to have this claim dismissed under Fed. R. Civ. P. 12(b)(6).

Under Louisiana law, the tort of invasion of privacy redresses the damage that an individual suffers when her right to privacy is violated.[29]  The right to privacy is defined in Louisiana as "the right to be let alone."[30]  A tort of invasion of privacy can occur in four ways:  (1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; or (4) by unreasonable public disclosure of embarrassing private facts.[31]  An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest.[32]  The reasonableness of the

---

[29]    *Tate v. Woman's Hosp. Foundation*, 2010-0425 (La. 01/19/11), 56 So.3d 194, 197.

[30]    *Tate v. Woman's Hosp. Foundation*, 56 So.3d at 197 (citing *Pack v. Wise*, 155 So.2d 909, 913 (La. App. 3rd Cir.), *writ denied*, 245 La. 84, 157 So.2d 231 (1963)).

[31]    *Tate v. Woman's Hosp. Foundation*, 56 So.3d at 197 (citing *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d 1386 (La. 1979)).

[32]    *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d at 1389.

defendant's conduct is determined by balancing the plaintiff's interest in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct.[33]

In this case, there is no allegation that the plaintiff's name or likeness was appropriated or misused and no allegation that that plaintiff's solitude or seclusion was interrupted. Therefore, to support a cause of action for invasion of privacy, the plaintiff would have to show either that the defendants released publicity that unreasonably placed the plaintiff in a false light before the public or made unreasonable public disclosures of embarrassing private facts concerning her. However, there is no allegation that anything about the plaintiff was published, publicized, or communicated to the general public. In response to this Court's conversion of the pending motions to motions for summary judgment, the plaintiff submitted no evidence. The plaintiff did not identify to whom false statements were allegedly made, when those statements were allegedly made, or what person other than Ms. Marks allegedly made the statements. Although expressly instructed to amend her complaint in order to make a more definite statement and to clarify her invasion of privacy claim, the plaintiff did not add a single new allegation regarding that claim but merely repeated the same allegations that were set forth in her original

---

[33]     *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d at 1389.

complaint. Although ordered to submit a supplemental brief and supporting evidence, the plaintiff failed to do so. Accordingly, this Court finds that the plaintiff's failure to allege facts supporting her invasion of privacy claim in her amended complaint and her failure to submit evidence in support of her claim after the pending motions were converted to motions for summary judgment are fatal to this claim. This Court therefore recommends that the invasion of privacy claim be dismissed with prejudice.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the defendants' Rule 12(f) motion to strike (Rec. Docs. 35 and 36) be GRANTED IN PART and DENIED IN PART. More particularly, IT IS RECOMMENDED that the motions to strike should be denied with regard to Paragraphs 17 and 18 of the plaintiffs' amended complaint but granted with regard to Paragraphs 32(C), 32(D), 32(G), 32(H), 32(I), and 32(J) as well as with regard to the words "conspiracy to defame." In other words, IT IS RECOMMENDED that the words "conspiracy to defame" should be stricken from the amended complaint and that Paragraphs 32(C), 32(D), 32(G), 32(H), 32(I), and 32(J) also be stricken from the amended complaint.

IT IS RECOMMENDED that the defendants' motions for summary judgment (Rec. Docs. 35 and 36) should be GRANTED IN PART and DENIED IN PART.

More particularly, it is recommended that the motions should be granted with regard to (a) the plaintiff's invasion of privacy claim, (b) the plaintiff's sexual harassment, hostile work environment, and retaliation claims under state law, and (c) the plaintiff's retaliation claims under federal law except for her claim that she was terminated from her employment in violation of Title VII, and further recommended that those claims should be dismissed with prejudice, while it is recommended that the motions for summary judgment should be denied with regard to the plaintiff's other claims.

As a point of clarification, this Court notes that, if these recommendations are adopted, the plaintiff's remaining claims will be her Title VII claim for retaliatory termination of her employment against DXP, her state-law intentional infliction of emotional distress against DXP and Ms. Marks, and her defamation per se claim against DXP and Ms. Marks.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[34]

Signed at Lafayette, Louisiana, this 8th  day of January 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[34]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).