# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **NICOLE RIGGS** | **CIVIL ACTION NO. 6:18-cv-00729** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **D X P ENTERPRISES, INC., ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 58] filed by Defendant DXP Enterprises, Inc. ("DXP"), doing business as the C.W. Rod Tool Co. ("C.W. Rod Tool"). DXP moves for summary judgment dismissing Plaintiff Nicole Riggs' ("Riggs") claims for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); intentional infliction of emotional distress ("IIED") under Louisiana state law; and defamation under Louisiana state law.

On October 9, 2019, Riggs filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 64].

On October 16, 2019, DXP filed a Reply Memorandum in support of its Motion for Summary Judgment [Doc. No. 67].

For the following reasons, DXP's Motion for Summary Judgment is GRANTED, and Riggs' retaliation, IIED, and defamation claims against DXP are DISMISSED WITH PREJUDICE.

## I.     FACTS AND PROCEDURAL HISTORY

Riggs was employed by DXP from October 16, 2013, to February 22, 2016, in the New Iberia, Louisiana branch of the company's Integrated Tooling Solutions ("ITS") department. The

ITS department handles the inventory and billing of vending machines that DXP stocks with state-of-the-art metal working and cutting tools and places at its customers' locations. Riggs was responsible for filling the tool orders for the customer accounts – or "consignments" – assigned to her, maintaining electronic inventory reports of the vending machines at her consignments, and generating bills for the tools used.

Tranae Marks ("Marks") was hired shortly after Riggs and also worked in the ITS department of DXP's New Iberia branch, holding the same position as Riggs.

In the fall of 2014, Gary Key ("Key"), the General Manager over DXP's seven C.W. Rod Tool offices at that time, and Brian Ross ("Ross"), the then-Operations Manager for the same seven offices, determined that the company needed an employee who could act as a lead technician at the New Iberia location. Key and Ross did not envision the lead technician as a managerial role, but as someone who could assist other technicians when questions or issues arose with the vending machines or computer system. DXP, acting through Key and Ross, selected Marks for the Lead ITS position, asserting that her knowledge of the vending machines, computer systems, and processes was superior to Riggs [Doc. No. 58-6, Declaration of Gary Key]. Despite both women starting at DXP around the same time and receiving the same training, DXP alleges that Riggs would often have to ask questions and seek assistance when problems arose, contacting the Integrated Tooling Solutions Manager at the main office in Houston, who would try to walk her through the problem by phone.

DXP contends that, starting in late 2014 and continuing through 2015, it faced a significant decline in business stemming from the economic downturn in the oil and gas industry. In the Louisiana and Texas markets, machine shops that perform repair work for the oil and gas industry are DXP's primary customers. During this time, the price of oil dropped drastically, forcing oil

companies to operate on a deficit. This meant that the oil companies ceased farming out repair work on their rigs and machinery to machine shops, and machine shops were going out of business, leaving little need for the tools and products DXP supplied.

Because of this decline in its key source of business, DXP asserts it was forced to reduce its staff. DXP laid off nine employees from its main Houston branch in April of 2015. While some markets improved, the oil and gas industry continued to decline throughout the remainder of 2015 and into the following year. According to DXP, this market shortfall directly impacted its profitability, a fact that it openly shared with all DXP employees as reflected in a company-wide email from David Little, DXP's Chief Executive Officer, on June 9, 2015. Six months after the April 2015 layoffs, DXP was again forced to reduce its personnel, laying off four employees at its main Houston branch, one employee from the West Houston office, one employee from the South Houston location, and two employees from the New Iberia branch.

Riggs was one of the two New Iberia branch employees laid off. February 22, 2016 was Riggs' last day at DXP. DXP asserts that it did not hire a replacement for Riggs and that Marks remained as the sole employee in the ITS department of its New Iberia location. DXP further asserts that, because the oil and gas industry still had not rebounded, it was forced to lay off nine more employees in April 2016.

On December 22, 2017, Riggs filed the pending lawsuit against DXP, Marks, and another former co-worker, Brian Ross ("Ross"). Riggs made allegations of sexual harassment and employment discrimination against DXP. She further asserted claims under Title VII and the Louisiana Employment Discrimination Law ("LEDL"). She claimed that she was discriminated against for having complained about sexual harassment by a customer, she claimed that the sexual harassment resulted in her being subject to a hostile work environment, and she claimed that her

employer's response to her complaints about this violated her constitutional rights protected under 42 U.S.C. § 1983. Riggs also asserted Louisiana state-law claims for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with her contractual and business relationships, invasion of privacy, harassment, negligent hiring, negligent supervision, and negligent retention of employees. Further, Riggs contended that she was denied leave under the Family and Medical Leave Act of 1993 ("FMLA"), and alleged that she filed a complaint with the Occupational Safety and Health Administration ("OSHA") after allegedly being forced to operate a forklift despite not being trained to do so.

On August 17, 2018, the Court granted in part a motion to dismiss filed by DXP and Marks, and dismissed with prejudice eleven of the claims that were asserted against the Defendants: the Section 1983 claim, the FMLA claim, the OSHA claim, the tortious interference with contract claim, the tortious interference with business relations claim, the five negligence claims, and the conspiracy-to-defame claim. The court also dismissed with prejudice any sexual harassment, hostile work environment, and retaliation claims asserted against Marks [Doc. Nos. 24 and 27].

DXP and Marks subsequently filed additional motions to dismiss, which the Court converted to motions for summary judgment [Doc. No. 45]. On January 23, 2019, the Court granted the motions and dismissed with prejudice Riggs' invasion of privacy claim; her sexual harassment, hostile work environment, and retaliation claims under state law; and her retaliation claims under federal law except for her claim that she was terminated from her employment in violation of Title VII [Doc. Nos. 50 and 52]. The Court also dismissed Riggs' claims against Ross as abandoned [*Id.*]

As a result of these rulings, Riggs' only remaining claims are her Title VII claim for retaliatory termination of her employment against DXP, her state-law intentional infliction of

4

emotional distress against DXP and Marks, and her defamation *per se* claim against DXP and Marks.

DXP now moves for summary judgment dismissing Riggs' remaining claims against it.[1]

## I. LAW AND ANALYSIS

### A. Standard of Review for Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Analysis

As set forth in her First Amended Complaint, Riggs' sole remaining Title VII claim against DXP is premised upon her allegations that DXP laid her off as part of a reduction-in-force in retaliation for filing a charge of discrimination against DXP with the Equal Employment

---

[1] Marks has filed a separate motion for summary judgment [Doc. No. 57] seeking dismissal of Riggs' remaining claims against her, which the Court will address in a separate ruling.

Opportunity Commission ("First EEOC Charge") and for voicing concerns about workplace safety violations. However, during her deposition, Riggs also attributed her lay off to her race.

Riggs also asserts that DXP employees defamed her during her employment with the company and on one occasion after she was laid off. The substance of these alleged defamatory statements ranges from false comments to DXP consignment customers that Riggs made inventory mistakes, inter-office gossip that Riggs slept around, to a single remark allegedly made to a DXP-customer employee insinuating that Riggs was selling drugs after her employment with DXP ended. In support of her claim that DXP intentionally inflicted emotional distress on her in violation of Louisiana state law, Riggs testified that she was ostracized, her requests for assistance were ignored, and she felt like her co-workers did not want her there.

The Court will address each of these three claims in turn.

### 1. Riggs' Title VII Claim for Retaliatory Termination

Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983) (holding that the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), applies to Title VII retaliation cases). Under this framework, the order and allocation of proof begins with Riggs, who has the initial burden of establishing a *prima facie* case of retaliation. *Id*. To satisfy this burden, Riggs must show that: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action by DXP; and, (3) a causal connection exists between the protected activity and the adverse employment action. *See Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489 (5th Cir. 2014). If Riggs cannot support all three elements of a *prima facie* case of retaliation, then summary judgment for DXP is appropriate. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

However, if Riggs successfully establishes a *prima facie* case, the burden then shifts to DXP to produce a legitimate, nonretaliatory reason for the adverse employment action. *Davis*, 480 F.3d at 490. Once DXP makes this showing, the burden shifts back to Riggs to prove that DXP's proffered reason is actually pretext for retaliation. *Davis*, 765 F.3d at 490. An employee establishes pretext by proving that "but for" the protected activity, she would not have suffered the employment actions of which she complaints. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). While this final step may seem identical to the causal connection prong of the prima facie case, the burden required to prove causation at this stage is more stringent. Indeed, "[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

### a. Can Riggs establish a *prima facie* case of retaliation?

Riggs claims DXP laid her off in retaliation for filing the First EEOC Charge and because she notified her supervisors that the company was violating OSHA safety standards by requiring her to operate a forklift when she lacked the requisite training and certification to do so. In addition, for the first time in her deposition, taken on July 30, 2019, Riggs, who is white, contends that impermissible considerations – namely, her race – motivated DXP's decision to include her in the reduction-in-force, and not Marks, who is black [Doc. No. 58-4, p. 30].

#### i. Race

There are critical distinctions between disparate treatment and retaliation as forms of discrimination. When a plaintiff raises a claim for the first time in an opposition to a motion for summary judgment, the Court may construe this claim as a motion to amend complaint. However, in this case amendment is futile   The Court finds that Riggs cannot sustain a cause of action based

on her new race-based assertion. It is undisputed that the charge of discrimination Riggs filed after her layoff from DXP ("Second EEOC Charge") does not mention race discrimination and is devoid of any indication that Riggs believed she was laid off because of her race. An EEOC investigation on Riggs' new suggestion that her layoff was racially motivated could not "reasonably be expected to grow out of the facts alleged in [the Second EEOC Charge]." *Pacheco v. Mineta*, 448 F.3d 783, 788-789 (5th Cir. 2006). Therefore, Riggs is barred from pursuing any race-based Title VII claim because she failed to exhaust administrative remedies. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Accordingly, to the extent that Riggs seeks to amend her complaint to add a Title VII race discrimination claim, leave to amend is denied.

The Court will now address whether Riggs can establish a prima facie case of retaliation on the grounds of the two other activities Riggs cites as the source of DXP's alleged retaliatory motive.

### ii. Filing the First EEOC charge

First, Riggs argues that DXP retaliated against her for filing an EEOC Charge. Filing the First EEOC Charge falls squarely within one of the enumerated avenues for Title VII coverage: "ma[king] a charge." 42 U.S.C. § 2000e-3(a). Additionally, she did suffer an adverse employment action—she was fired. Even so, DXP asserts that Riggs cannot demonstrate a causal link between the filing of her First EEOC Charge and her discharge necessary to establish a *prima facie* case of retaliation and survive summary judgment.

DXP argues first that there is no "temporal proximity" between the filing of Riggs' First EEOC Charge on October 5, 2015, and her termination on February 22, 2016, a period of approximately four-and-a-half months.

"Without direct evidence, the causation element can be difficult to prove." *Pryor v. MD Anderson Cancer Ctr.*, 495 Fed. App'x. 544, 547 (5th Cir. 2012) (*citing Nowlin v. Resolution* Trust *Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)). Temporal proximity between protected activity and an adverse employment action is sometimes enough to establish causation at the prima facie stage. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (*citing Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188, n. 3 (5th Cir.1997)). However, the protected act and the adverse employment action must be "very close" in time for temporal proximity to alone suffice as satisfying the causation prong of a prima facie case of retaliation. *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (*quoting Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Fifth Circuit precedent on that point, although largely unpublished, considers a gap of longer than three months too tenuous to establish causation. *See Ajao v. Bed Bath & Beyond, Inc.*, 265 Fed. App'x. 258, 265 (5th Cir. 2008) (finding temporal proximity of four months "not close enough"); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) (three-and-a-half-month gap, did not, by itself, create a causal link); *Myers v. Crestone Int'l, LLC*, 121 Fed. Appx. 25, 28 (5th Cir. 2005) (three-month gap, same); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir.2002) (five-month lapse, same)

Under this precedent, the roughly four-and-a-half-month gap between DXP's notification that Riggs filed the First EEOC Charge and her separation from employment would be insufficient to establish a causal link.

The Fifth Circuit does recognize two other indicia of causation: (1) the absence of any reference to the conduct at tissue in the employee's disciplinary record and (2) deviation from the

employer's customary "policy and procedures in terminating the employee." *Nowlin*, 33 F.3d at 508. Neither means of proving a causal connection have been asserted by Riggs in this case.

Riggs has offered no evidence of a causal connection, other than mere conjecture. The Court concludes that Riggs has failed to establish a *prima facie* case with regard to a causal connection between the filing of the first EEOC Charge and her termination.

###        iii.    Contacting OSHA

Riggs also contends DXP retaliated against her by including her in the reduction in force because DXP was allegedly concerned that she would alert OSHA about safety violations; namely, that Riggs was operating a forklift without proper instruction and certification.

Title VII does not encompass OSHA violations. *See* 42 U.S.C. § 2000e-2(a). Indeed, courts evaluating retaliation claims based on facts similar to those in the instant case have consistently held that an employee who has reported OSHA violations has not engaged in statutorily protected activity under Title VII. *See Washington v. M. Hanna Constr., Inc*., 299 Fed. App'x. 399, 401 (5th Cir. 2008) ("Because Title VII does not encompass violations of OSHA . . . Plaintiff's alleged reporting of [defendant] to authorities for violating OSHA does not qualify as protected activity under Title VII."); *Langford v. Magnolia Adv. Materials, Inc*., No. 15-1115, 2017 WL 5203048, at *15 (N.D. Ga. Jan. 3, 2017) (holding that plaintiff could not establish a prima facie case of retaliation because his complaint with OSHA for unsafe working conditions was not protected activity under Title VII); *Dixon v. Primary Health Servs. Ctr*., No. 10-1490, 2012 WL 1566279 (W.D. La. May 1, 2012) (granting summary judgment, finding that plaintiff failed to establish a prima facie case of retaliation because participation in an OSHA proceeding is not protected activity under Title VII).

Nor do internal safety complaints constitute protected activity under Title VII. *See Green v. Trimac Transp. South Inc.*, No. 10-444, 2012 WL 12893293, at *16 (E.D. Tex. Sept. 12, 2012) (granting summary judgment on plaintiff's retaliation claim based on allegation that plaintiff was discharged in retaliation for safety complaints on the ground that complaining of an employer's safety violations is not a protected activity under Title VII); *Mayers v. Shaw Indus.*, No. 09-2635, 2010 WL 5158418, at *4 (D.S.C. Nov. 23, 2010) (dismissing plaintiff's retaliation claim premised on reporting alleged safety violations on the ground that he did not engage in activity protected by Title VII); *Acosta v. City of Phoenix*, No. 05-1810, 2006 WL 3499963, at *11 (D. Ariz. Dec. 4, 2006) (holding that plaintiff failed to establish a prima facie case of Title VII retaliation based on his complaints of employer's alleged violation of federal environmental laws and state safety regulations).

Riggs' contact with OSHA does not qualify as protected activity under Title VII. Accordingly, Riggs cannot establish a *prima facie* case of retaliation on this basis as a matter of law.

> **b.     Can Riggs rebut DXP's legitimate, nonretaliatory reason for her termination?**

Even if Riggs could establish a *prima facie* case of retaliation, her claim nonetheless fails. DXP has produced evidence that Riggs was terminated as part of the second round of multi-location reductions-in-force that DXP implemented between 2015 and 2016. *See* [Doc. No. 58-6, Declaration of Gary Key]. As a matter of law, a company-wide layoff in response to declining profitability is itself a legitimate nonretaliatory reason for terminating an employee. *See e.g., Baker v. Am. Airlines, Inc.,* 430 F.3d 750, 755 (5th Cir. 2005) (finding that defendant's company-wide ten percent reduction in force was a legitimate nonretaliatory reason for terminating plaintiff's employment); *see also E.E.O.C. v. Tex. Instruments, Inc.,* 100 F.3d 1173, 1181 (5th Cir.1996)

(finding a reduction in force is a legitimate, non-discriminatory reason for eliminating positions and discharging employees).

The burden therefore falls on Riggs to show that the reduction-in-force is actually pretext for retaliation. *See LeMaire v. La. Dep't. of Transp. & Dev*., 480 F.3d 383, 388-89 (5th Cir. 2007).

An employee establishes pretext by showing "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 570 U.S. at 362. To survive summary judgment, the plaintiff must show "'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Rodriguez v. Brownsville Indep. Sch. Dist*., 739 Fed. App'x. 227, 231 (5th Cir. 2018) (quoting *Long v. Eastfield Coll*., 88 F.3d 300, 308 (5th Cir. 1996)).

Of the various actions Riggs cites as spawning DXP's alleged retaliatory motive to terminate her employment, filing her First EEOC Charge is the only protected activity that can serve as the basis for Riggs' retaliation claim. Thus, to avoid summary dismissal of her retaliation claim, Riggs must provide sufficient evidence to allow a reasonable juror to conclude that her filing of the First EEOC Charge was the "but-for" cause she was laid off. *See Nassar*, 570 U.S. at 362. Put differently, Riggs must establish that had she not filed the First EEOC Charge, she would have remained in her position at DXP.

In her opposition, Riggs asserts that DXP's justifications are mere pretext for two reasons: first, she asserts that reducing 13 employees in Houston and 2 employees in New Iberia is not much of a reduction of employees based on a response to changes in the market for DXP, a billion dollar corporation with more than 2400 employees; and, second, that shortly after she was terminated, she was replaced by two others, Mark Benoit and Jason Tippy [Doc No. 64-2].

DXP responds that Riggs' first assertion to the Court overlooks two critical facts. First, Riggs worked for DXP at one of its C.W. Rod Tool branches, and her job duties arose from the operations of this limited division of DXP. In other words, the proper and accurate assessment of Riggs' employment termination is within the context of the reductions-in-force made at those seven locations. There were only 133 DXP employees working at its C.W. Rod Tool offices in Louisiana and Texas at the start of 2015. Therefore, laying off 26 of those employees equated to a 20% reduction to that specific division of DXP. Second, DXP did experience a company-wide reduction-in-force that reached beyond the seven C.W. Rod Tool branches. Between January 2015 and December 2016, DXP was forced to lay off 389 employees [Doc. No. 68 SEALED].

DXP responds that Riggs' second assertion to the Court is incorrect because neither Jason Tippy nor Mark Benoit were hired by DXP between 30 – 60 days following Riggs' layoff as she asserts in her affidavit. Mr. Benoit was not hired until June 13, 2016, four months after Riggs' employment with DXP ended [Doc. No. 67-2]. And Mr. Tippy was not rehired until January 23, 2017, almost a full calendar year after Riggs was let go on February 22, 2016 [Doc. NO. 67-3]. More importantly, however, neither Mr. Benoit nor Mr. Tippy held positions with duties that overlapped Riggs' job tasks as an ITS Technician. Mr. Benoit was a Sales Professional, and his responsibilities were to foster, grow, and develop relationships with companies engaged in metal working to help drive sales of DXP's products and services [Doc. No. 67-4]. Mr. Tippy was a Customer Service Representative, and, while his responsibilities did include filling customers' orders of DXP products, he only processed orders customers placed over the phone [Doc. No. 67-5]. Riggs' was responsible for maintaining inventory levels of the tools DXP stocked in vending machines on certain customers' project site [Doc. No. 67-6].

"In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Chaney v. NOPSI*, 179 F.3d 164, 168 (5th Cir. 1999) (*citing Elliot v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983)).

Here, Riggs has offered no summary judgment evidence in support of her assertions. DXP, on the other hand, has offered the declaration of Tommie Garcia, its Director of Human Resources, in support of its contentions, along with the New Hire Tracking Forms for Benoit and Tippy, the Sales Professional Job Description, the Customer Service Representative Job Description, and the Account Manager Job Description. Riggs has failed to carry her burden of showing "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.

Accordingly, for the above reasons, DXP is entitled to summary judgment dismissing Riggs' claims for retaliation under Title VII of the Civil Rights Act of 1964.

### 2. Riggs' Defamation Claim

Riggs has sued DXP for defamation contending that after her employment separation, Marks told third parties that Riggs was a drug addict and bought and sold illegal drugs. In addition, Riggs has generally alleged that DXP employees made patently false and unsubstantiated statements about her "on other occasions," including that she was "having sex with people in the office."

At her deposition, Riggs identified four specific communications which she contends were defamatory: (1) a question Marks allegedly asked Sheila Price, an employee of Loadmaster Industries, one of DXP's customers about Riggs "selling pills;" (2) comments Ross allegedly made to Jason Watson, a former DXP employee, describing Riggs as a "black widow" and cautioning

14

Watson to "steer clear" of Riggs; (3) statements made by Maurice Racca, head of the ITS at DXP, to DXP customers and Riggs' consignment accounts about errors in Riggs' inventory calculations; and, (4) office gossip that Riggs was sleeping with her superiors and also customers to pay her bills. These alleged communications were made by different DXP personnel, at different times, in different settings, and to different persons.

DXP contends that all of these alleged defamatory statements share two commonalities: they were made outside the one-year prescriptive period for defamation claims, and they lack an element essential to render DXP liable.

Louisiana's law on prescription controls because a "federal court sitting in diversity will apply state prescription periods as substantive law." 09-2499, *Ricard v. Essex Ins. Co.,* 2009 WL 2762711, at *2 (E.D. La. Aug. 26, 2009). Delictual actions have a one-year prescriptive period, which "commences to run from the day injury or damage is sustained." LA. CIV. CODE ART. 3492. Defamation is a delictual claim and is subject to the one-year prescriptive period. *Ioppolo v. Rumana*, 06-193, 2012 WL 4960385, at *5 (.M.D. La. Oct. 16, 2012); s*ee also Wiggins v. Creary,* 475 So.2d 780, 781 (La.App. 1 Cir. 1985). Similarly, because intentional infliction of emotional distress is a tort claim, it is subject to a one-year prescriptive period. *Ioppolo*; s*ee also Godfrey v. Reggie,* 2011–1575 (La. App. 2 Cir. 5/2/12); 94 So.3d 82, 89.

For prescription purposes, "damages are sustained from the date the injury is inflicted, if immediately apparent to the victim, even though the extent of the damages may not yet be known." *Collinson v. Tarver Land Dev., LLC,* 11-1787, 2012 WL 688551, at *1 (W.D. La. Feb. 1, 2012); *see also Rice v. Felterman*, 00-2525 (La. App. 1st Cir. 3/28/02), 814 So. 2d 696 ((Former employee's defamation action against employer accrued, and one-year prescriptive period began to run, when employee first learned that employer filed form with National Association of

Securities Dealers (NASD) stating that employee was terminated for free riding and expense account abuse.))

Riggs filed suit in state court on December 22, 2017; thus, her defamation claim is time-barred to the extent that it is based on statements of which she was aware before December 22, 2016.

DXP asserts that Riggs knew about all of the alleged comments she has cited in support of her defamation claim prior to December 22, 2016. Riggs was aware of Racca's alleged comments to DXP customers and the various incidents of office gossip while she was still employed with DXP. [Doc. No. 58-4, p. 21-22]. Riggs filed suit precisely one year and ten months after her February 22, 2016 layoff from DXP. Thus, according to DXP, all of the alleged defamatory comments made during Riggs' employment with DXP are prescribed.

Riggs learned of Ross' alleged comment to Watson and other DXP employees that Riggs was a "black widow" and to "steer clear" of her in October 2016, approximately fourteen months before she filed suit. [Doc. No. 58-4, p. 19-20].

Finally, at her deposition, Riggs testified that she was contacted about "some ugly things" Marks allegedly said about Riggs to Price immediately after Marks left Loadmasters on December 7, 2016. [Doc. No. 58-4, p. 45]. There is no evidence that Marks repeated the alleged "selling pills" comment or any other claimed defamatory *per se* statement to third parties after this December 7, 2016 exchange with Price. [*Id.*]

DXP concludes that, because Riggs was aware of all of the comments that she cites in support of defamation claim more than one year before she filed suit, her claim has prescribed and DXP is entitled to summary judgment.

On its face, Riggs' defamation action was filed outside of the one-year prescriptive period. It was therefore incumbent on her to show that the claims are not prescribed. *Rice*, 814 So. 2d at 699.

Riggs argues first that the filing of a second charge of discrimination with the EEOC on May 26, 2016, for which she received a "Dismissal and Notice of Rights" Form on September 26, 2017, interrupted prescription with regard to her defamation claim against DXP. However, it is well-settled that administrative claims filed with the EEOC do not interrupt prescription for Louisiana state tort claims. Courts in the Fifth Circuit hold that the filing of such a charge does not toll, interrupt, or suspend prescription for tort claims. *See Taylor v. Bunge Corp.*, 775 F.2d 617, 618-19 (5th Cir. 1985); *Fussell v. BellSouth Communications, Inc.,* No. 96-1660, 1998 WL 12229, *2 (E.D. La. Jan.8, 1998); *Roth v. N.J. Malin & Associates*, 98-1793, 1998 WL 898367, *5 (E.D. La. Dec. 21, 1998); *Brouillette v. TransAmerican Refining Corp.*, 95-0584, 1995 WL 683869, *4 (E.D. La. Nov. 11, 1995) ("plaintiff's federal and state law claims are not embodied in the same legislative scheme...consequently, plaintiff's filing of administrative proceedings do not operate to toll or suspend the prescriptive period on plaintiff's state law claims.") This authority dispels the arguments of Riggs as to timeliness based on the filing of an EEOC charge.

Riggs next suggests that defamation is a continuing tort, and that DXP has engaged in ongoing and concerted acts in harassing and retaliating against her to deny her civil right to earn a living. She accuses DXP of acting in a manner so as to deny her right to work. However, not only did Riggs failed to plead such a cause of action in her Complaint or timely amend her complaint to include it, she has also failed to offer any evidence beyond her subjective belief that supports this new post-termination claim.

Riggs offers nothing more than her subjective belief that DXP or any of its employees gave her a bad reference or "poisoned" her reputation. In cases involving similar allegations predicated solely on the plaintiff's subjective belief, courts have granted summary judgment. *See Thomas v. Atmos Energy Corp.*, No. 04-2088, 2006 U.S. Dist. LEXIS 27125, at *25 (W.D. La. Apr. 19, 2006) (granting summary judgment where the plaintiff had no personal knowledge that her former employer provided a "negative reference"); *Noches v. Tex. HHS Comm'n*, No. 97-577, 1998 U.S. Dist. LEXIS 24032, at *11 (W.D. Tex. May 28, 1998), aff'd 1999 U.S. App. LEXIS 41362, at *1 (5th Cir. Jan. 27, 1999) (affirming grant of summary judgment where plaintiff provided only hearsay testimony that he did not get the job because another applicant's reference from defendant employer was better).

Finally, Riggs argues that the *contra non valentem* doctrine should apply here and excuse her delay in filing in suit. "Louisiana courts strictly construe this doctrine and only extend its benefits up to the time that the plaintiff has actual or constructive knowledge of the tortious act," which is "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 742 (5th Cir. 2000) (citing *Dickson v. Houck*, 466 So.2d 557-59 (La. App. 2nd Cir. 1985)); *Plaquemines Parish Commission Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987).

With the exception of Marks' statement to a Loadmaster employee on December 7, 2016, all of the alleged statements Riggs identified in her deposition as forming the basis of her defamation claim against DXP occurred prior to her employment termination on February 22, 2016.

Riggs testified that on December 7, 2016, she was called immediately to let her know that Marks had asked the "oh, selling drugs?" question about her that day. On December 8, 2016,

Riggs was provided with the email from Sheila Price describing the conversation. The alleged remark referenced in the email is the only statement Riggs claims to be defamatory by Marks. Based on the law and these facts, the *contra non valentem* doctrine has no application. As of December 7, 2016, Riggs had sufficient facts and a reasonable basis for knowing that she had been allegedly defamed.

Riggs has presented the Court with no evidence to justify application of the *contra non valentem* exception. There is no evidence that: (1) there was a legal cause for preventing a court from taking cognizance of her claim; (2) there was a condition which prevented her from suing; (3) DXP did anything to prevent her from availing herself of the claim; and (4) the cause of action was not known or reasonably knowable by her. *Plaquemines Parish Commission Council*, 502 So.2d at 1056. Therefore, there is no equitable basis in the record that would justify the tolling of the prescriptive period.

Riggs testified that on December 7, 2016, she was "immediately" made aware of the comments, and she has offered no evidence that would result in the tolling or suspension of the one-year prescriptive period. Therefore, she had until December 7, 2017, to file suit. Suit was not filed until December 22, 2017. Riggs' defamation claims against DXP are thus prescribed.

### 3. Riggs' IIED Claim

Like her defamation claim, Riggs' IIED claim is also governed by Louisiana Civil Code article 3492's one-year prescriptive period. *Mayes v. Office Depot*, 292 F.Supp.2d 878, 896 (W.D. La. 2003). For purposes of beginning the one-year prescriptive period, an IIED claim accrues on the date the conduct allegedly causing emotional distress occurred. *See* LA. CIV. CODE ART. 3492. In this case, all of the acts that Riggs claims caused her to suffer severe emotional distress occurred

during her employment with DXP. Specifically, Riggs attributes the following acts to her IIED claim:

> Not receiving responses from DXP management to her questions about serving customers' machines and the product inventory;
>
> Being ostracized to where she was just being left alone and having to deal with things on her own, which lead to mistakes;
>
> Feeling like her DXP colleagues did not want her there, were talking about her, looking at her; and that everything she did was incorrect.

[Doc. No. 58-4, p. 39]

Riggs did not sue DXP until December 22, 2017, precisely one year and ten months after her employment with DXP ended on February 22, 2016. Because Riggs waited more than one year before bringing her IIED claim against DXP, her claim is time-barred and the Court must summarily dismiss it.[2]

## II. CONCLUSION

Based on the foregoing, DXP's Motion for Summary Judgment [Doc. No. 58] is GRANTED, and Riggs' claims for retaliation under Title VII of the Civil Rights Act of 1964; intentional infliction of emotional distress ("IIED") under Louisiana state law; and defamation under Louisiana state law against DXP are DISMISSED WITH PREJUDICE. As a result of this Ruling, all claims against DXP have been dismissed.

MONROE, LOUISIANA, this 31st day of October, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[2] Having determined that Riggs' defamation and IIED claims against DXP are prescribed, the Court need not address DXP's alternative arguments that Riggs cannot meet her ultimate burden of proving defamation or IIED.